IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

```
LONNIE R. WALES,                  )
                                  )
            Plaintiff,            )
                                  )
      v.                          )  Civil Action No. 05-1067
                                  )
COLUMBIA GAS OF PENNSYLVANIA,     )
INC., COLUMBIA GAS OF MARYLAND,   )
INC. and NiSOURCE, INC.,          )
                                  )
            Defendants.           )
```

MEMORANDUM

I

In this civil action, plaintiff, Lonnie R. Wales,
asserts claims against defendants, Columbia Gas of Pennsylvania,
Inc. ("CGPA"), Columbia Gas of Maryland, Inc. ("CGMD") and
NiSource, Inc. ("NiSource"), under the Americans with
Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and the
Pennsylvania Human Relations Act ("PHRA"), 43 Pa.C.S.A. §§ 951
*et seq.*  Presently before the court is the motion of CGMD and
NiSource to dismiss plaintiff's complaint pursuant to
Fed.R.Civ.P. 12(b)(6).[1]  For the reasons set forth below, the
motion will be denied.

---

[1]On October 3, 2005, CGPA filed an answer to plaintiff's
complaint.

II

In summary, plaintiff's complaint alleges the following facts:

Plaintiff was employed by defendants from 1975 to January, 2004.  Most recently, plaintiff held the position of leak inspector, and plaintiff performed his job as a leak inspector throughout Southwestern Pennsylvania.  In 1990, plaintiff was diagnosed with a seizure disorder as a result of head injuries sustained in an accident that did not occur in the course of his employment with defendants.  Due to his seizure disorder, plaintiff is required to take various medications. (Complaint, ¶¶ 11-13).

On the morning of January 6, 2004, plaintiff responded to a report of a gas leak at 708 Giffin Avenue in Canonsburg, Pennsylvania, arriving at approximately 9:05 a.m.  At approximately 9:10 a.m., plaintiff requested a crew at the site of the gas leak, and, at approximately 9:20 a.m., plaintiff asked a supervisor, Vince Yadouga ("Supervisor Yadouga"), to come to the site immediately due to the severity of the gas leak. Despite additional requests for Supervisor Yadouga to come to the site of the gas leak at approximately 9:40 a.m., 10:32 a.m. and 10:55 a.m., he did not arrive at the site until 12:30 p.m. (Complaint, ¶¶ 15-20).

2

Plaintiff asked another supervisor at the site of the gas leak, Kevin Lewis ("Supervisor Lewis"), for permission to leave work at his normal quitting time.  When permission was not denied, plaintiff left the site at approximately 3:30 p.m.  At approximately 4:30 p.m., a house located on Highland Avenue in Canonsburg, Pennsylvania exploded.  At 4:45 p.m., plaintiff was contacted at home and asked to return to the site of the gas leak to continue his job as a leak inspector.  Plaintiff remained at the site until 2:00 a.m. on January 7, 2004.  At no time was plaintiff ordered to check the house that exploded, and at no time was plaintiff advised by Supervisor Yadouga that the situation on January 6, 2004 was an "emergency situation." (Complaint, ¶¶ 22-26).

Plaintiff returned to work on January 7, 2004 at 7:00 a.m.  However, when he logged into his computer, there were no work orders.  At approximately 12:30 p.m., Supervisor Yadouga asked plaintiff to return to Canonsburg to perform his job as a leak inspector.  At the request of Supervisor Lewis, plaintiff went to the St. Clair Health Center at Southpointe for a drug screening at approximately 4:00 p.m.  Plaintiff reported to work the next day, and, again, his computer contained no work orders. As a result, plaintiff began "marking maps," which he continued to do on a daily basis until January 19, 2004.  (Complaint, ¶¶ 27-31).

On January 19, 2004, plaintiff met with a representative of defendants to review the events of January 6, 2004.  At the conclusion of the meeting, plaintiff was advised that he was being relieved of his duties and that he would be receiving a letter from defendants.  Thereafter, on January 21, 2004, plaintiff received a letter from defendants, advising him that his employment was terminated.  The letter, which was dated January 19, 2004, cited the following reasons for plaintiff's termination: (a) failure to report results of gas testing to proper authority; (b) failure to utilize the proper equipment; (c) incorrect use of the HFI unit; and (d) leaving an emergency situation without notifying his supervisor.  Plaintiff disputed the stated reasons for his termination in writing.  To the best of his knowledge, plaintiff was the only employee who was terminated as a result of the events of January 6, 2004. (Complaint, ¶¶ 32-37).

Plaintiff filed a timely charge of disability discrimination with the Equal Employment Opportunity Commission ("EEOC"), which was dually filed with the Pennsylvania Human Relations Commission ("PHRC").  This civil action is timely because it was filed within 90 days of plaintiff's receipt of a right to sue letter.  (Complaint, ¶¶ 8-9).

4

III

A motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6) tests the sufficiency of a complaint.  In deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true the facts pleaded in the complaint and any reasonable inferences derived from those facts.  <u>Langford v. City of Atlantic City</u>, 235 F.3d 845, 847 (3d Cir.2000).  In addition, the court is to construe the complaint in the light most favorable to the plaintiff.  <u>Weston v. Pennsylvania</u>, 251 F.3d 420, 425 (3d Cir.2001).  However, the court is not required to accept as true legal conclusions or unwarranted factual inferences.  <u>Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.</u>, 113 F.3d 405, 417 (3d Cir.1997).

IV

A

The enforcement provisions of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, which prohibits an employer from discriminating against an individual with respect to compensation, terms, conditions or privileges of employment because of the individual's race, color, religion, sex or national origin, are applicable to claims of disability discrimination under the ADA.  42 U.S.C. § 12117.  Thus, the filing of an administrative charge with the EEOC is a prerequisite to bringing suit against an employer under the ADA.

5

42 U.S.C. § 2000e-5(e). Similarly, to bring suit against an employer under the PHRA, a plaintiff must first have filed an administrative charge with the PHRC. <u>Woodson v. Scott Paper Co.</u>, 109 F.3d 913, 925 (3d Cir.1997).

CGMD and NiSource assert that the ADA and PHRA claims asserted against them in this case must be dismissed based on plaintiff's alleged failure to name them as respondents in his administrative charge of disability discrimination. *See, e.g.*, <u>Schafer v. Bd. of Pub. Educ. of the School Dist. of Pittsburgh, PA</u>, 903 F.2d 243, 251-52 (3d Cir.1990)(A Title VII action ordinarily may be brought only against a party previously named in an EEOC action). In support of this assertion, CGMD and NiSource rely on the Dismissal and Notice of Rights issued to plaintiff by the EEOC on May 4, 2005. (Brief in Support, Exh. A). After consideration, the Court concludes that this argument is meritless.

First, the Dismissal and Notice of Rights issued by the EEOC does not identify specifically the respondent or respondents named in the administrative charge filed by plaintiff. Rather, the document merely indicates that a copy was mailed to "Columbia gas (sic) of PA., Inc., its Successors and Assigns." Second, plaintiff attached a copy of his administrative charge to the brief filed in opposition to the motion to dismiss, which (a) clearly identifies CGMD and NiSource as respondents, (b) sets

forth in detail the nature of the respondents' alleged

discriminatory acts; (c) indicates that the charge was dually

filed with the PHRC; and (d) contains a verification executed by

plaintiff.  (Brief in Opposition, Exh. A).[2]

       Contrary to the position of CGMD and NiSource that the

administrative charge attached to plaintiff's brief in opposition

is "nothing more than a letter from his counsel to the EEOC"

(Reply Brief, p. 1), the Court finds that the administrative

charge, despite its form, satisfies the filing requirements of

Title VII.[3]  *See, e.g.*, <u>Price v. Southwestern Bell Telephone Co.</u>,

687 F.2d 74 (5th Cir.1982)(Principal function of administrative

charge of employment discrimination filed with the Commission is

to provide adequate factual basis for the Commission's initiation

---

    [2]In ruling on the motion to dismiss, the Court notes that it
may consider the Dismissal and Notice of Rights issued to
plaintiff by the EEOC on May 4, 2005, which was submitted by CGMD
and NiSource in support of the motion, as well as the
administrative charge filed with the EEOC, which was submitted by
plaintiff in opposition to the motion, without converting the
motion to dismiss into a motion for summary judgment under
Fed.R.Civ.P. 56.  *See, e.g.*, <u>Pension Ben. Guar. Corp. v. White
Consol. Industries, Inc.</u>, 998 F.2d 1192, 1196 (3d Cir.1993),
*cert. denied*, 510 U.S. 1042 (1994)(Court may consider
undisputedly authentic document that defendant attaches as
exhibit to motion to dismiss if plaintiff's claims are based on
that document).

    [3]Although the Court concludes that CGMD and NiSource were
named as respondents in plaintiff's administrative charge, this
conclusion should not be considered a determination by the Court
that CGMD and NiSource are proper defendants in this case.  This
issue cannot be resolved until the parties have engaged in
discovery.

of investigatory and conciliatory procedures, and charges are construed with the utmost liberality, taking into account that function); E.E.O.C. v. General Elec. Co., 532 F.2d 359 (4th Cir. 1976)(While Commission is without jurisdiction to proceed in absence of valid charge, purpose of charge is only to initiate Commission investigation, to trigger investigatory and conciliatory procedures of Commission and is not to be treated as common law pleading that strictly cabins resulting investigation or reasonable cause determination that may rest on that investigation); E.E.O.C. v. Dillard Dept. Stores, Inc., 768 F.Supp. 1247 (W.D.Tenn.1991)(EEOC intake questionnaire which identified party to be charged, as well as aggrieved party, and specific alleged discriminatory practices satisfied Title VII charge-filing requirement).

                                    B

        NiSource also asserts that it is entitled to the dismissal of plaintiff's claims in this case because it is not an "employer" as defined in the ADA and the PHRA. *See* 42 U.S.C. § 12111(5)(A) and 43 Pa.C.S.A. § 954(b). In fact, NiSource maintains that it is a holding company with no employees. After consideration, the Court concludes that this issue cannot be decided on a motion to dismiss. Accordingly, this aspect of the motion to dismiss filed by CGMD and NiSource will be denied

without prejudice to NiSource's right to raise the issue in a
motion for summary judgment after the close of discovery.[4]

      An order follows.


                        s/William L. Standish
                     William L. Standish
            United States District Judge


Date: November 28, 2005


cc:      Natalie M. Ruschell, Esq.
          308 Eaton Street, P.O. Box 577
          Midway, PA 15060
          Email: ssmitsky@adelphia.net

          Catherine S. Ryan, Esq.
          REED SMITH
          435 Sixth Avenue
          Pittsburgh, PA 15219-1886
          Email: cryan@reedsmith.com

---

[4]In response to NiSource's alternative argument in support
of the motion to dismiss, plaintiff concedes that if, in fact,
NiSource is not an employer as defined in the ADA and the PHRA,
it should be dismissed from this suit.  However, based on several
documents, including his 2003 and 2004 W-2 forms and the letter
terminating his employment (Brief in Opposition, Exhs. B and C),
plaintiff requests discovery on the issue, and the Court
concludes that plaintiff is entitled to such discovery.